# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDITH STOVER-STAUCH          :          CIVIL ACTION
         Plaintiff          :
         :
         v.          :    JAN   2011

MICHAEL, Clerk
By_____ Dep. Clerk

MICHAEL J. ASTRUE,          :
Commissioner of the          :
Social Security Administration,          :          NO. 09-5268
         Defendant

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                   January 13, 2011
UNITED STATES MAGISTRATE JUDGE

Edith Stover-Stauch ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c), of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act"). Plaintiff has filed a request for review, the Commissioner has responded to it and Plaintiff has filed a reply. For the reasons set forth below, it is recommended that Plaintiff's request for review be GRANTED in part and DENIED in part; based on the fully developed record, Plaintiff should be found disabled based on the January 19, 1993 findings of her treating physician, Alan J. Miller, M.D. Further, this matter should be remanded for the Commissioner to determine the onset date of Plaintiff's disability and to award benefits accordingly.

## I. PROCEDURAL HISTORY[1]

Plaintiff initially applied for DIB and SSI on August 14, 1989, alleging disability since

---

[1] I have reviewed and considered the following documents in analyzing this case: Plaintiff's Complaint, Plaintiff's Brief and Statement of Issues in Support of her Request for Review, Defendant's Response to Request for Review of Plaintiff, Plaintiff's Reply to Defendant's Response to Request for Review of Plaintiff, and the administrative record ("R."), inclusive of all exhibits thereto.

December 15, 1987, as a result of lower back problems. (R. 328). Benefits were denied both

initially and upon reconsideration; Plaintiff did not seek further administrative review. (R. 328).

On December 3, 1991, Plaintiff reapplied for DIB and SSI alleging disability since December 27,

1987, as a result of lower back, leg and neck pain, depression,[2] insomnia,[3] headaches and dizziness.

(R. 328). Benefits were denied, initially and on reconsideration, whereupon, Plaintiff requested and

was granted an administrative hearing. (R. 328). On February 9, 1993, Plaintiff, represented by

counsel, appeared before Gerald Spitz, Administrative Law Judge ("ALJ Spitz"), for an

administrative hearing; Plaintiff, and a vocational expert ("VE") testified at the hearing. (R. 30-77).

On August 20, 1993, ALJ Spitz, using the sequential evaluation process for disability,[4] issued an

---

[2]The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders lists three categories of depressive disorders, including Major Depressive Disorder, Dysthymic Disorder and Depressive Disorder Not Otherwise Specified. See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision at 369-82 (2000) ("DSM-IV-TR").

[3]Insomnia is defined as the "inability to sleep; abnormal wakefulness." Dorland's Illustrated Medical Dictionary, at 845 (28th ed. 1994) ("Dorland's").

[4]The current Social Security Regulations provide the following five-step sequential evaluation for determining whether or not a claimant is disabled:

> 1. If claimant is working, doing substantial activity, a finding of not disabled is directed. Otherwise proceed to Step 2. See 20 CFR §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. See 20 CFR §§ 404.1520(c), 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 CFR, a finding of disabled is directed. Otherwise proceed to Step 4. See 20 CFR §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. See 20 CFR §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. See 20 C.F.R. §§ 404.1520(g), 416.920(g).

unfavorable decision. (R. 16-21). On February 7, 1994, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 4-5). Plaintiff sought judicial review in this court and, on May 31, 1995, the Honorable Raymond J. Broderick remanded the case to the Commissioner so that the ALJ could: (1) properly consider the findings of Plaintiff's treating physician, Alan J. Miller, M.D.;[5] (2) consider the report of Plaintiff's psychotherapist, Virginia Davidow, LSW; and (3) complete a Psychiatric Review Technique form. (R. 388-91).

The case was then remanded to ALJ Spitz before whom a second administrative hearing was held on April 14, 1998; Plaintiff and a VE testified at the hearing. (R. 585-613). At this hearing, Plaintiff amended her claim to seek only a closed period of disability from December 27, 1987 to August 31, 1993.[6] (R. 586). On June 1, 1998, ALJ Spitz, using the sequential evaluation process for disability, again issued an unfavorable decision. (R. 414-21). On May 28, 1999, the Appeals Council granted Plaintiff's request for review, and directed that the case be remanded to a different ALJ for proper consideration of Dr. Miller's opinion contained in his January 1993 report and for the completion of a Psychiatric Review Technique form. (R. 431-33).

On October 6, 1999, ALJ Paula Garrety conducted a third administrative hearing; Plaintiff and a VE again testified. (R. 616-32). On January 24, 2000, ALJ Garrety, using the sequential evaluation process for disability, issued an unfavorable decision. (R. 328-37). On May 9, 2005, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 307-09). Plaintiff sought judicial review in this court and, on August 29,

---

[5] Judge Broderick specifically concluded that, inasmuch as Plaintiff suffered from a degenerative disease, the ALJ could not properly discount the physical limitations Dr. Miller found in a January 19, 1993 report by relying on Dr. Miller's finding of lesser physical limitation in a May 28, 1992 report. (R. 388).

[6] The parties do not dispute ALJ Paula Garrety's subsequent finding that Plaintiff's closed period commenced on September 29, 1989, (R. 329) and ended on August 31, 1993. (R. 330).

2006, the Honorable Lawrence F. Stengel, approving and adopting the undersigned's July 28, 2006 report and recommendation, remanded the case to the Commissioner so that ALJ Garrety could properly evaluate Plaintiff's residual functional capacity and the opinions of Charles V. Giannasio, M.D. (R. 697-98, 679-95).

ALJ Garrety conducted a fourth administrative hearing on December 5, 2006; Plaintiff and a VE testified. (R. 740-82). On December 21, 2006, ALJ Garrety, using the sequential evaluation process for disability, again issued an unfavorable decision. (R. 657-67). The Appeals Council denied Plaintiff's request for review on September 24, 2009, making ALJ Garrety's decision the final decision of the Commissioner. (R. 633-35). Plaintiff sought judicial review; this case was referred to the undersigned by Judge Stengel, under the authority of 28 U.S.C. § 636(b)(1)(B), for preparation of a report and recommendation.

## II.   FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on May 11, 1953, (R. 113), was 53 years old at the time of the fourth and latest administrative hearing. She has a tenth grade education and past relevant work as an assistant food manager, box packager, and assembler of electronic switches. (R. 590, 591-93). Plaintiff is married and lives with her second husband.[7] (R. 628). Plaintiff stopped working in 1987, when many back spasms allegedly rendered her bedridden. (R. 35, 37).

B.   Plaintiff's Testimony

At the first administrative hearing, Plaintiff testified about her impairments.[8] She was

---

[7] At the time of the first administrative hearing, February 9, 1993, Plaintiff was divorced and lived with her two youngest daughters, then aged 17 and 14. (R. 33). Plaintiff re-married on August 21, 1993. (R. 628).

[8] The court will focus on Plaintiff's testimony at the first administrative hearing, because it was much more extensive than her testimony at the three subsequent hearings and because it was given in closest proximity to the relevant, closed period for disability.

physically abused as a child by her father and, as an adult, by her first husband. (R. 41-42). The abuse from her husband caused her back problems. (R. 41). Her back progressively worsened during her first marriage until she became bedridden every couple of weeks for three to four days at a time. (R. 42). Plaintiff alleges that lifting even five pounds or bending at the waist caused severe spasms, requiring bed rest. (R. 34, 54). Plaintiff says she is typically confined to bed for approximately four days every month. (R. 50). Reaching also causes severe pain in her upper back. (R. 55). To help alleviate her back pain, Plaintiff soaks in a tub thrice daily,[9] takes Darvocet,[10] Robaxin,[11] and Percocet,[12] and uses a TENS unit[13] three times a day for twenty minutes at a time. (R. 43-44, 48-49, 51, 58). She feels most comfortable lying on her bed with two pillows elevating her legs, (R. 50), and avoids prolonged sitting, because she cannot get up easily. (R. 50, 54).

Plaintiff received psychotherapy from Virginia Davidow, LSW for approximately eight years. (R. 46). She initially saw Ms. Davidow because of difficulties adjusting to single parenting and having severe back problems that prevented her from working. (R. 46-47). Plaintiff indicated she felt depressed and anxious about whether she would be able to provide a good home for her children since she was unable to work. (R. 47-48).

On a typical day, Plaintiff awakens at 4:00 a.m., lays on a heating pad for twenty minutes, takes Darvocet and Robaxin, and then tries to help prepare her daughters for school. (R. 48-49). While the girls attend school, Plaintiff sometimes performs light dusting, or prepares her own lunch. (R. 49). Her daughters and fiancé perform most of the household chores including: laundry,

---

[9] Plaintiff's daughters or fiancé help her get into the tub; her daughters assist with morning grooming. (R. 53).

[10] Darvocet relieves mild to moderate pain. *Physicians' Desk Reference*, at 402 (59th ed. 2005) ("*2005 PDR*").

[11] Robaxin, (injectable) "is a central nervous system . . . depressant with sedative and musculoskeletal relaxant properties." *2005 PDR* at 809.

[12] Percocet is indicated for the treatment of moderate to moderately severe pain. *2005 PDR* at 1223.

[13] A TENS unit provides transcutaneous electrical nerve stimulation helpful for pain relief. *The Merck Manual*, at 2495 (17th ed. 1999).

washing dishes, shopping, and carrying groceries. (R. 50). Plaintiff either cooks dinner or heats TV dinners. *Id.*

Plaintiff can drive, but does not travel long distances or use public transportation. (R. 51). She seldom visits friends or relatives; in the year she has been together with her fiancé, they visited friends perhaps four times. (R. 52, 58). Several friends do visit Plaintiff at her home. (R. 52). She and her fiancé dine out and watch videos at her home. (R. 58). Plaintiff pursues her only hobby, making wreaths, about three or four hours a week. (R. 52).

C.    Medical History

Dr. Miller, Plaintiff's treating physician, evaluated Plaintiff's ability to perform work-related activities on May 28, 1992 and January 14, 1993. (R. 201-02, 230-33). In his May 1992 evaluation, Dr. Miller found that, although Plaintiff could occasionally lift and carry less than ten pounds, she should not frequently[14] lift and carry any weight. (R. 201). He felt that Plaintiff could stand and walk for less that two hours in an eight hour workday, had unlimited ability to sit and was limited in pushing and pulling with her upper extremities. *Id.* Plaintiff could never climb, balance, stoop, kneel, crouch or crawl. (R. 202). Further, while Plaintiff was limited in her ability to reach, she remained unlimited in her ability to handle, be dextrous, see, hear or speak. *Id.*

In his January 1993 evaluation, Dr. Miller specified that Plaintiff could occasionally lift and carry no more than two to three pounds and never frequently[15] lift and carry any weight. (R. 230). He found Plaintiff could stand or walk for four hours in an eight hour work day and sit for one hour in an eight hour work day. (R. 231). She should never climb, kneel, balance, crouch or crawl. *Id.*

---

[14]The form Dr. Miller completed defined "occasionally" as two to three cumulative hours in an eight hour work day and "frequently" as three to five cumulative hours in an eight hour workday. (R. 201).

[15]The form Dr. Miller used for this evaluation defined "occasionally" as "from very little up to 1/3 of an 8-hour day," and "frequently" as "from 1/3 to 2/3 of an 8-hour day." (R. 230).

Dr. Miller further found that Plaintiff's ability to reach, handle, and push and pull were impaired by her constant upper and lower back pain and spasm. (R. 232).

Kenneth A. Sperling, Ph.D., Plaintiff's treating psychologist from 1986 to 1987, prepared two letters to Dr. Miller concerning his treatment of Plaintiff's psychological problems. (R. 541, 547-48). The first letter, dated October 10, 1986, states that Plaintiff first treated with him, upon Dr. Miller's referral, on October 2, 1986. (R. 547). At that time, Plaintiff expressed frustration and anger toward her estranged, first husband and felt trapped and helpless due to her physical condition, impending divorce, and financial difficulties. (R. 548). He diagnosed Plaintiff as suffering from Dysthymic Disorder.[16] *Id.*

Dr. Sperling's November 13, 1987 letter explained that Plaintiff had made "great strides" during counseling and was taking control of areas of her life which she had previously allowed others to manipulate and control. (R. 541). Plaintiff felt good about her new-found strength and was exerting more control over her life than she ever imagined to be possible. *Id.* She also commented that she felt like a mother, rather than a custodian of her children, for the first time. *Id.* Dr. Sperling opined that Plaintiff had progressed from a Dysthymic Disorder to an Adjustment Disorder with Mixed Emotional Features[17] and terminated therapy based on his and Plaintiff's mutual consent and agreement. *Id.*

Virginia Davidow, LSW, Plaintiff's treating psychotherapist, reported on her treatment of Plaintiff, on June 19, 1992. (R. 203-06). Ms. Davidow treated Plaintiff from June 1985 though June

---

[16]Dysthymic Disorder has as its essential feature "a chronically depressed mood that occurs for most of the day more days than not for at least 2 years." DSM-IV-TR at 376.

[17]An Adjustment Disorder is "a psychological response to an identifiable stressor or stressors that results in the development of clinically significant emotional or behavioral symptoms." DSM-IV-TR at 679. There is a subtype called "With Mixed Disturbance of Emotions or Conduct," which exits when "the predominant manifestations are both emotional symptoms (e.g., depression, anxiety) and a disturbance of conduct . . . ." *Id.* at 680.

12, 1992.[18] (R. 203). She saw Plaintiff only once or twice a month because of Plaintiff's financial constraints. *Id.* Ms. Davidow attributed Plaintiff's depression to an abusive first marriage, continuing financial struggles, single parenting, and chronic back problems. *Id.* Notably, Plaintiff's dosage of Prozac,[19] prescribed by her family physician, had been reduced over the course of treatment. *Id.* She described Plaintiff's behavior and psychomotor activity as very lethargic and her speech as tangential; her mood varied from depressed to anxious, the continuity of her stream of thought was poor, she had poor concentration, but had satisfactory orientation of time, place and person. (R. 204). Ms. Davidow found Plaintiff's remote and recent memory to be fair, however, her immediate retention and recall were low. (R. 205). Plaintiff's impulse control was fair, as was her social judgment. *Id.* Plaintiff still had panic attacks, but seemingly controlled them better. *Id.* Ms. Davidow concluded that Plaintiff struggled with her physical and emotional condition and, sometimes, could not handle daily tasks as a result of her condition. (R. 206).

D.   State Agency Assessments

Two state agency doctors evaluated Plaintiff's Residual Functional Capacity in August and September 1989. (R. 179-80, 183-84). Both concluded that Plaintiff could occasionally lift up to fifty pounds and frequently lift and/or carry up to twenty-five pounds. (R. 179, 183). She could stand and/or walk for six hours in an eight hour workday, sit for six hours in an eight hour work day, and push and pull without limitation. *Id.* They found no postural, sensory or environmental restrictions. *Id.*

Dr. Giannasio conducted a consultative psychiatric examination of Plaintiff, in March 1993,

---

[18]At the February 9, 1993 administrative hearing, Plaintiff testified that she was still seeing Ms. Davidow. (R. 46).

[19]Prozac is appropriate for the treatment of: (1) Major Depressive Disorder; (2) obsessions and compulsions in patients with obsessive-compulsive disorder; (3) binge-eating and vomiting behaviors in patients with moderate to severe bulimia nervosa; and (4) panic disorder. *2005 PDR* at 1874-75.

(R. 284), and prepared a written report, (R. 284-87), a Psychiatric Activities Assessment ("PAA"), (R. 288-91), and a Medical Assessment of Ability To Do Work-Related Activities (Mental) ("MA"). (R. 292-93). Dr. Giannasio completed the PAA and the MA forms with text or checkmarks, as appropriate. (R. 288-93). In his written report, he indicated that Plaintiff was able to perform serial sevens, had a fair ability to abstract and evidenced immediate recall and short-term memory; however, she had limited insight into the emotional components of her difficulties and fair judgment. (R. 286). He diagnosed Plaintiff as suffering from Dysthymic Disorder and concluded that her prognosis was guarded. *Id.*

In the PAA, Dr. Giannasio further noted that Plaintiff hardly ever used public transportation, paid her bills on time and had adequate personal grooming and hygiene. (R. 288). He found Plaintiff had adequate social maturity, was respectful, comfortable and co-operative with persons in authority but was easily annoyed by others. (R. 289). Plaintiff could understand and follow instructions and make decisions, but she was impaired in: carrying out activities within a schedule, attending to a task from beginning to end, sustaining a routine and performing at a consistent pace, because of loss of energy and motivation. (R. 290). Dr. Giannasio assessed that Plaintiff had only fair ability to adapt to change, would withdraw from conflict, could make decisions, had adequate awareness of normal hazards, but lacked energy and motivation for: reacting to deadlines or schedules and maintaining regular attendance. (R. 291).

In the MA, Dr. Giannasio reported his finding that Plaintiff had "good"[20] ability to: follow work rules; deal with the public; interact with supervisors; and understand, remember and carry out detailed, but not complex work instructions and simple job instructions. (R. 292-93). He found

---

[20]On the MA, "good" is defined as "ability to function in this area is limited but satisfactory." (R. 292).

Plaintiff only had "fair"[21] ability to: relate to co-workers; use judgment; deal with work stresses; function independently; maintain attention and concentration; understand, remember and carry out complex job instructions; maintain personal appearance; behave in an emotionally stable manner; relate predictably to social situations; and demonstrate reliability. (R. 292-93). Dr. Giannasio attributed all of Plaintiff's limitations to her depression. *Id.*

F.    Vocational Testimony

At the second administrative hearing,[22] the VE classified all of Plaintiff's past work as unskilled[23] and light,[24] except for her past work as a packager in 1986 and 1987, which was unskilled and medium[25] and her job as an assistant food manager, which was semiskilled[26] and light. (R. 603-05). The VE was asked to consider if Dr. Giannasio findings that Plaintiff was seriously limited in her ability to: function independently, behave in an emotionally stable manner and relate predictably in social situations were vocationally significant because they could lead to termination from employment. (R. 610-11). The VE, considering Dr. Giannasio's overall findings that Plaintiff was seriously limited in ten different areas of mental functioning, opined that this was "a critical amount of categories to be deficient." (R. 611-612).

At the third administrative hearing, the VE testified that the exertional limitations contained

---

[21]On the MA, "fair" is defined as "ability to function in this area is seriously limited, but not precluded." (R. 292).

[22]Vocational experts also testified at the first, third and fourth administrative hearings. However, Plaintiff had not yet been examined by Dr. Giannasio at the time of the first hearing. The second, third, and fourth administrative hearings yielded the most relevant vocational testimony, hence, the court will focus on those.

[23] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[24]"Light work involves lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[25]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[26]"Semiskilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R §§ 404.1568(b), 416.968(b).

-10-

in Dr. Miller's January 19, 1993 report would restrict the person to part-time work. (R. 622). He was also asked to consider the postural, reaching and handling, and pushing and pulling limitations in that report. *Id.* The VE opined that these limitations would permit an extremely limited range of part-time, sedentary work. (R. 623). He stated that the postural limitations would not affect the sedentary work base but the reaching and handling limitations would. *Id.*

At the fourth administrative hearing, ALJ Garrety asked the VE to consider a person of Plaintiff's age (during the relevant period), education, and work experience, who was able to perform light or sedentary [27] work that allows the person to change position at will, unskilled work (as a result of her education), limited to routine, one-to-two-step tasks (as a result of deficits in concentration and independent judgment), limited contact with the public and co-workers (as a result of limited or poor ability to deal with stress), and that allowed self-paced work with few work changes. (R. 744-45). The VE responded that such a person could only perform Plaintiff's past job as an assembler, (R. 745), but could also perform: (1) unskilled, light assembly work (numbering 200,000 positions nationally and 1,800 regionally); (2) unskilled, sedentary assembly work (numbering 130,000 positions nationally and 1,400 regionally); unskilled light packing work (numbering 280,000 positions nationally and 2,200 regionally); and unskilled sedentary packing work (numbering 210,000 positions nationally and 1,900 regionally). (R. 745). The VE stated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT").[28] *Id.* The VE opined that the restrictions contained in Dr. Giannasio's MA, (R. 292-93), would allow for the jobs she had already

[27]"Sedentary work involves lifting no more that 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[28]The VE identified the DOT number for Plaintiff's past assembly job as 712.687-010, (R. 747); she identified the alternative light packing job as a dental floss packer with the DOT number 920.687-082. (R. 765). The VE did not provide DOT numbers for any of the other, alternative jobs she identified.

identified. (R. 746-47). Further, the restrictions contained in Dr. Giannasio's PAA, (R. 288-91), would preclude skilled[29] and semi-skilled (but not the unskilled) work the VE had previously identified. (R. 752-53).

## III.   THE ALJ's FINDINGS

After the last hearing, ALJ Garrety issued the following findings:

1.   [Plaintiff] met the insured status requirements of the Social Security Act through June 30, 1990.

2.   [Plaintiff] has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 416.920(b).

3.   [Plaintiff's] has the following severe impairments: dysthymic disorder and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c).

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(c), 416.925, 416.926).

5.   After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform unskilled sedentary and light exertion work, which involves lifting up to 20 pounds occasionally, frequent sitting/standing/walking, the opportunity to alternate positions at will, limited contact with the public/co-workers, self-paced work, and few work changes.

6.   [Plaintiff's] was born on May 11, 1953 and was 34 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 404.1563 and

---

[29]"Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

416.963).

7.  [Plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8.  Transferability of job skills is not an issue in this case because [Plaintiff's] past relevant work is unskilled (20 CFR 404.1568 and 416.968).

9.  [Plaintiff] is able to perform her past relevant work as an assembler (20 CFR 404.1565 and 416.965).

10. In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that [Plaintiff] can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), 416.966).

11. [Plaintiff] has not been under a "disability," as defined in the Social Security Act, from December 15, 1987 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 660, 666-67).

## IV.   DISCUSSION

### A.   Standard of Judicial Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). It is more than a mere scintilla of evidence but may be less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should grant deference if the ALJ's findings of fact are supported

by substantial evidence even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler,* 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied,* 482 U.S. 905 (1987). On the other hand, the Commissioner's legal conclusions are subject to plenary review. *Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 545 (3d Cir. 2003); *Schaudeck,* 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (b) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell,* 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, Plaintiff must initially demonstrate that a medically determinable disability prevents her from returning to past employment. *See Brown v. Bowen,* 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, and work experience. *See Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 92 (3d Cir. 2007);

-14-

*Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.    Review of the Administrative Law Judge's Decision

ALJ Garrety, applying the sequential evaluation process, determined that Plaintiff was not disabled at any time and, therefore, denied her disability benefits. (R. 667). Plaintiff argues that ALJ Garrety: (1) failed to evaluate her impairments in combination at step three of the sequential evaluation process; (2) improperly rejected the opinion of treating physician, Dr. Miller; and (3) improperly rejected the psychiatric assessment of Dr. Giannasio. *Plaintiff Edith Stover-Stauch's Brief and Statement of Issues in Support of Her Request for Review* ("Pl.'s Br.") at 6-24. Plaintiff further contends that this court ought to direct the Commissioner to award her benefits rather than remand the case again. *Id.* at 24-26. The Commissioner requests that the court affirm ALJ Garrety's finding that Plaintiff was not disabled. *Defendant's Response to Request for Review of Plaintiff* ("Def.'s Br.") at 1-15.

1.    ALJ Garrety Failed to Evaluate Plaintiff's Impairments in Combination

Plaintiff maintains that ALJ Garrety failed to evaluate all of her severe impairments in combination at step three of the sequential evaluation process ("SEP"). Pl.'s Br. at 6-7. This rendered ALJ Garrety's step three discussion inadequate under 20 C.F.R. §§ 404.1523, 416.923[30] and *Cooper v. Comm'r of Soc. Sec.*, 268 Fed. Appx. 152 (3d Cir. 2008) (non precedential). Pl.'s Br. at 6-7. Petitioner also submits a copy of the challenged page of the ALJ's decision in *Cooper* which addressed step three of the SEP. Pl.'s Br. at Exhibit A. The Commissioner asserts that this assignment of error lacks merit, Def.'s Br. at 2, but fails to explain why. In particular, he fails to

---

[30]These provisions state: "In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any impairment, if considered separately, would be of sufficiently severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." 20 C.F.R. §§ 404.1523, 416.923.

address whether or not ALJ Garrety complied with 20 C.F.R. §§ 404.1523, 416.923, as construed in *Cooper*.

In this case, ALJ Garrety's entire step three analysis is contained in two paragraphs of her Decision. (R. 660). She states: "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Part P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(c), 416.925, 416.926)." (R. 660). After stating this conclusion, ALJ Garrety explains why Plaintiff does not meet Listed Impairments 1.04 or 12.04. *Id.* However, she does not explain why Plaintiff's combination of impairments fails to meet or medically equal a listed impairment. This failure is similar to what occurred in *Cooper*. Hence, as in *Cooper*, ALJ Garrety committed reversible error.[31]

### 2. ALJ Garrety Improperly Rejected Dr. Miller's Opinions

Plaintiff maintains that ALJ Garrety improperly rejected the opinions of her treating physician, Dr. Miller. Pl.'s Br. at 8-17. Presently, Plaintiff argues – as she did during her first pursuit of judicial review – that ALJ Garrety improperly rejected Dr. Miller's January 19, 1993 findings for being unwarrantedly worse that his May 28, 1992 findings. Dr. Miller's January 19, 1993 findings are significant, inasmuch as, at the third administrative hearing, the VE testified that such limitations preclude full-time employment. (R. 622-23). The Commissioner defends that ALJ Garrety appropriately rejected Dr. Miller's January 19, 1993 findings. Def.'s Br. at 6-11.

In his May 31, 1995 opinion, Judge Broderick noted that ALJ Spitz had rejected Dr. Miller's January 1993 findings solely based upon the fact that his May 1992 findings were less severe. (R.

---

[31] The ALJ's step three discussion in *Cooper* was more extensive than ALJ Garrety's in this case and, like ALJ Garrety's Decision, it also contained the conclusion that Cooper had no combination of impairments that met or medically equaled a listed impairment. *See* Pl.'s Br. at Exhibit A. Nonetheless, the Third Circuit found such cursory discussion inadequate in *Cooper*. *See* 268 Fed. Appx. at 156. Hence, *Cooper* clearly supports the conclusion that ALJ Garrety committed reversible error in this case.

388). Judge Broderick found this rejection to be erroneous because Plaintiff suffers from a degenerative condition. *Id.* He explained that ALJ Spitz could have properly reject Dr. Miller's subsequent and more severe restrictions had he found contrary medical evidence, but ALJ Spitz had not done so. *See id.* ("The ALJ does not refer to any specific medical evidence to contradict Dr. Miller's January 14, 1993 findings of impairment except Dr. Miller's own earlier findings of May 28, 1992.").

ALJ Garrety evaluated Dr. Miller's January 19, 1993 findings as follows:

> It is notable that Dr. Miller's initial opinion in May 1992 was consistent with at least a range of sedentary exertion work. By January 1993, Dr. Miller inexplicably reduced [Plaintiff's] ability to sit from unrestricted to only 1 hour in an 8-hour day. However, the contemporaneous medical evidence of record does not document any significant change, let alone deterioration, in [Plaintiff's] condition. Rather, his reported decrease in function mirrors [Plaintiff's] allegations of increased limitations. As the extreme functional limitations cannot be corroborated by the objective and clinical findings of record, Dr. Miller's assessments have been afforded little weight.

(R. 665). ALJ Garrety's assessment of Dr. Miller's January 1993 opinions suffers from similar infirmities as ALJ Spitz's prior assessment of the same opinions. That is, ALJ Garrety failed to recognize that Plaintiff suffers from a degenerative condition and ALJ Garrety fails to identify medical evidence which contradicts Dr. Miller's opinion that Plaintiff's condition worsened between May 1992 and January 1993. Absent contrary medical evidence, ALJ Garrety lacked authority to reject Dr. Miller's January 1993 assessment of Plaintiff's limitations. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (noting that a treating physician's opinions must be afforded great weight and may only be rejected *via* contradictory medical evidence in the record). Thus, ALJ Garrety's bald assertion that no evidence supported Dr. Miller's January 1993 findings

was improper. *See Mason v. Shalala*, 994 F.2d 1058, 1068 & n.15 (3d Cir. 1993) (explaining that an absence of medical evidence to corroborate a medical opinion is not equivalent to contradictory medical evidence).

The Commissioner argues that ALJ Garrety's assessment of Dr. Miller's January 19, 1993 findings can be sustained because no medical evidence documents that Plaintiff's condition had deteriorated between May 1992 and January 1993. Def.'s Br. at 8. This reasoning mirrors ALJ Garrety's error.

The Commissioner also argues that Dr. Miller's January 1993 findings constitute an assessment of Plaintiff's residual functional capacity ("RFC") and, hence, under the Commissioner's regulations, are not medical opinions and may be ignored. *See* Def.'s Br. at 9-10. Dr. Miller's January 1993 findings certainly do assess Plaintiff's RFC in that they state his opinions concerning the type and level of physical activity Plaintiff can perform. *See* R. 230-32; 20 C.F.R. § 404.1545(a), 416.945(a) (defining a claimant's RFC as the most she can do despite her limitations). Per the Commissioner's regulations, opinions concerning a claimant's disability and RFC are not medical opinions. 20 C.F.R. §§ 404.1527(e)(1)-(2), 416.927(e)(1)-(2). In *Johnson v. Comm'r of Soc. Sec.*, the Third Circuit expressly held that, in light of § 404.1527(e)(1), a treating physician's opinion that the claimant was disabled was not a medical opinion and an ALJ could afford it no weight. 529 F.3d 198, 203 n.2 (3d Cir. 2008). Yet, in *Brownawell*, the Third Circuit characterized a treating physician's opinion that the claimant was disabled as a medical opinion entitled to great weight, and, since the ALJ did not cite contrary medical evidence to reject the opinion, found the claimant disabled. 554 F.3d at 355-58. Following *Brownawell*, the more recent decision, this court finds that ALJ Garrety should have afforded Dr. Miller's January 1993 findings great weight and could only

reject them by citing contrary medical evidence.[32] ALJ Garrety failed to do so, and, hence, she committed reversible error.[33]

### 3. ALJ Properly Rejected Dr. Giannasio's Psychiatric Assessment

Plaintiff maintains that ALJ Garrety improperly rejected the psychiatric assessment of Dr. Giannasio. Pl.'s Br. at 18-24. The Commissioner maintains that ALJ Garrety properly evaluated Dr. Giannasio's findings. Def.'s Br. at 12-13.

ALJ Garrety rejected Dr. Giannasio's findings and chose to accept the findings of Plaintiff's treating sources, Dr. Sperling and Ms. Davidow. (R. 665-66). This is a permissible invocation of the treating physician rule. *See Mason*, 994 F.2d at 1067; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Indeed, the prior report and recommendation noted that ALJ Garrety could have invoked the treating physician rule in her January 24, 2000 Decision, *see* R. 693, but, since she had not, this court could not invoke the rule for her. *See id.* (citing *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001)).

Dr. Sperling's November 13, 1987 letter to Dr. Miller indicates that Plaintiff's psychiatric functioning had improved since commencing therapy with him in October 1986 and that he and Plaintiff had agreed to terminate her therapy. (R. 541). He also decided that her condition had improved from Dysthymic Disorder to an Adjustment Disorder with Mixed Emotional features. *Id.* Ms. Davidow's June 19, 1992 report suggests that Plaintiff's condition may have improved over time because her Prozac dosage had decreased over time and she was better able to control her panic attacks. (R. 203, 205). Yet, Ms. Davidow's report also indicates Plaintiff could be very lethargic,

---

[32] The court awaits the day that the Third Circuit resolves the conflict between *Johnson* and *Brownawell*.

[33] This court may not search the record for the requisite contrary medical evidence. *See Fargnoli v. Massanari*, 247 f.3d 34, 44 n.7 (3d Cir. 2001).

had tangential speech, poor social judgment, poor continuity of thought, poor concentration, fair remote and recent memory, fair impulse control, and fair insight. (R. 204-05). These findings do not strongly support ALJ Garrety's decision to reject Dr. Giannasio's findings. However, the court believes that Dr. Sperling's findings do support ALJ Garrety's decision. Hence, there is substantial evidence to sustain ALJ Garrety's decision to reject Dr. Giannasio's findings. *See Pierce*, 487 U.S. at 565 (noting that substantial evidence is not a large or considerable amount of evidence).

    4.    <u>Plaintiff is Disabled</u>

Plaintiff argues that, because of the errors ALJ Garrety made, the unlikelihood that the record will change, and the lengthy delays she has endured, this court should reverse the Commissioner and direct that she be awarded benefits for the closed period. Pl.'s Br. at 24-26. The Commissioner asserts that Plaintiff cannot establish that she is disabled. Def.'s Br. at 2-3.

Plaintiff's present claim for disability benefits, filed on December 3, 1991, has been pending for over 19 years; her claim has been improperly denied several times and this is the third time she has sought judicial review. This incredibly long period of time far exceeds the time the Third Circuit has found excessive in prior cases. *See Brownawell*, 554 F.3d at 358 (noting that it had allowed for benefits to be awarded in three cases where the claimants had waited 5, 8 and 10 years for an award). Hence, the length of time Plaintiff has waited supports an award of benefits.

Since this case involves a closed period, there is no likelihood that the material record would be modified upon remand. *See id.* (noting that the record must be fully developed before a court may order an award of benefits). Further, ALJ Garrety duplicated the error ALJ Spitz committed in August 1993 with respect to Dr. Miller's January 19, 1993 findings. *See supra* Section IV.C.2. The court finds there is little likelihood that, if this case underwent a third judicial remand, ALJ Garrety

would be able to find contrary medical evidence in the existing record to properly reject those findings. Further, according to valid vocational testimony existing in the record, those findings preclude full-time employment. (R. 622-23). Hence, Plaintiff is entitled to be found disabled based on Dr. Miller's January 19, 1993 findings. *See* Social Security Ruling 96-8p, ("SSR 96-8p"),1996 WL 374184, *2 (explaining that a person cannot sustain work on a regular and continuing basis unless the person can work full-time).[34] This court recommends that Plaintiff be found disabled and that the Commissioner determine the onset of her disability so that a proper award of benefits can be made.

## V.   CONCLUSION

After a thorough review of the record, this court finds that the Commissioner's final decision contains reversible error and is not supported by substantial evidence, hence, Plaintiff's request for review should be granted in part and denied in part. Further, Plaintiff should be found disabled based on the exiting record. This case should be remanded for the Commissioner to determine the onset date of disability and award Plaintiff benefits accordingly. Therefore, I make the following:

---

[34]There is a narrow exception to this rule. If the person's past relevant work was part-time, she can be found not disabled at step four of the SEP if she still perform that part-time job. SSR 96-8p, 1996 WL 374184, *8 n.2. That exception is not applicable herein because there is no record evidence that Plaintiff's past assembler job was part-time.

## RECOMMENDATION

AND NOW, this 13th day of January, 2011, I respectfully recommend that:

1. The Report and Recommendation be APPROVED and ADOPTED.

2. The Plaintiff's Request for Review be GRANTED in part and DENIED in part.

3. Plaintiff be found disabled and the Commissioner shall determine the onset date of her disability and award her benefits.

4. Judgment be ENTERED for Plaintiff and against the Defendant Commissioner of the Social Security Administration.

It be so ORDERED.

CAROL SANDRA MOORE WELLS
United States Magistrate Judge

EDITH STOVER-STAUCH             :           CIVIL ACTION
           Plaintiff                    :
                                         :

        v.                              :
                                         :

MICHAEL J. ASTRUE,               :
Commissioner of the               :
Social Security Administration,      :           NO. 09-5268
           Defendant

## ORDER

**AND NOW**, this        day of               , 2011, after careful review and

independent consideration of Plaintiff's request for review, Defendant's response thereto,

Plaintiff's reply, and review of the Report and Recommendation of Carol Sandra Moore Wells,

United States Magistrate Judge, it is hereby **ORDERED** that:

1.      The Report and Recommendation is **APPROVED** and **ADOPTED**;

2.      The Plaintiff's Request for Review is **GRANTED** in part and **DENIED** in part; and

3.      Plaintiff is disabled based on the January 19, 1993 findings of her treating physician, Alan J. Miller, M.D., hence, upon remand, the Commissioner shall determine the onset date of her disability and award her benefits accordingly.

It is so **ORDERED**.

                              **BY THE COURT**:


                              _____
                              LAWRENCE R. STENGEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDITH STOVER-STAUCH       :       CIVIL ACTION
      Plaintiff        :
              :
    v.           :
              :
MICHAEL J. ASTRUE,        :
Commissioner of the        :
Social Security Administration,     :       NO. 09-5268
      Defendant

## ORDER

    **AND NOW**, this     day of         , 2011, it is hereby **ORDERED**

that Judgment is **ENTERED** in favor of Plaintiff Edith Stover-Stauch and against Defendant

Michael J. Astrue, Commissioner of the Social Security Administration. Upon remand, the

Commissioner shall determine the onset date of Plaintiff's disability and award her benefits

accordingly.

It is so **ORDERED**.

            **BY THE COURT**:


          _____
          LAWRENCE F. STENGEL, J.